IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>vs.<br><br>MICHAEL W. KRUSE,<br><br>                 Defendant. | 4:16CR3043<br><br>**FINDINGS AND**<br>**RECOMMENDATION** |

The defendant has moved to suppress all evidence and statements obtained during a search of his residence on October 29, 2015. ([Filing No. 28](#)). Defendant argues the search warrant was not supported by probable cause and statements were given in violation of his constitutional rights.

BACKGROUND

The relevant facts from the hearing testimony, warrant application, and warrant are as follows:

In October of 2015, Ed Sexton, an investigator with the Nebraska State Attorney General's Office, contacted Sergeant Bret Strecker of the Columbus Police Department. Sexton informed Strecker that the Attorney General's Office was monitoring an IP address with a Columbus location. The computer associated with the IP address had downloaded files which were considered to be child pornography using a peer-to-peer network. Strecker and Sexton communicated on the phone regarding the investigation and Sexton sent Strecker his investigation report.

Strecker learned that the IP address involved, IP 76.84.193.184, was registered to RoadRunner/Time Warner Cable and he applied for a subpoena seeking subscriber information for the IP address on October 14, 2015. (Exh. 2). The company responded to the

subpoena providing the name, address, and phone number of the defendant and stating that the IP address was still active. (Exh. 2 at p. 4).

On October 27, 2015, Strecker sought a search warrant for Defendant's residence. (Filing No. 32-1). Strecker has investigated child pornography cases for around seven years. He previously applied for search warrants in investigations involving child pornography downloaded from peer-to-peer networks between five to ten times. When drafting the affidavit on October 27, Strecker opened a saved Microsoft Word document of one of his previous 'peer-to-peer' warrants. Strecker then used the saved document as a template: He deleted content specific to the prior investigation and replaced it with information applicable to the current investigation. Strecker testified that he does this because much of the information for the warrant is the same, including information regarding his training, the items sought, and information about computers, IP addresses, and identifiers.

Paragraphs 20 through 29 of the affidavit included information specific to the investigation of IP 76.84.193.184. The affidavit states that through Sexton's investigation, IP 76.84.193.184 was found to have downloaded at least 51 files consistent with child pornography. (Filing No. 32-1 ¶¶ 20–22 at CM/ECF p. 6). The affidavit provided a description of three files found on the computer. (Id. ¶¶ 24, 25, & 26 at CM/ECF pp. 6–7). These files each depicted a child identified by the National Center for Missing and Exploited Children ("NCMEC") engaged in sexual acts. (Id.). The affidavit summarizes that the files met the definitions and terms outlined under Nebraska law for child pornography. (Id. ¶ 28 at CM/ECF p. 7). Paragraph 29 then states "[A]fter confirming that this IP is registered to RoadRunner/Time Warner Cable, I requested an administrative subpoenas for subscriber information regarding the account holder using IP 76.84.193.235, as well as 76.84.203.155. That subpoenas were issued and served on Time Warner." (Id. ¶ 29 at CM/ECF p. 7). The remainder of Paragraph 29 states that Time Warner responded to the subpoena with the defendant's information.

Strecker testified that the two IP addresses listed in Paragraph 29 were left from the 'template' affidavit and mistakenly appeared in affidavit supporting the search warrant for Kruse's residence. In reality, Strecker had sought an administrative subpoena using IP 76.84.193.184 which had returned the defendant's address and information. (See Exh. 2).

Strecker reviewed the affidavit and warrant and submitted them for the county judge's signature. Neither Strecker nor the judge caught the mistake in Paragraph 29 and the judge signed the warrant.

The police department had not planned on executing the warrant that day. And sometime after receiving the warrant, Strecker drove by the residence to assess the scene—Strecker usually performs this investigation before applying for the warrant, but he did not on this occasion. When Strecker drove by the residence, he realized that he had not provided a specific description of the residence within the warrant (he had only included the address). Strecker decided to fix the warrant by adding a specific description of the residence, and submit it to the judge again. Strecker was not concerned with the rest of the affidavit or warrant when he fixed the description: He believed the rest was accurate. He again did not realize the mistake in Paragraph 29. The affidavit and warrant were resubmitted to the county judge, who signed the warrant on October 29, 2015.

On October 29, 2015, Sergeant Strecker and approximately four other officers executed the warrant. They arrived at the residence around 12:30 p.m.  No one responded when the officers knocked at the door of the residence, but the officers discovered the door was unlocked. After securing dogs located at the residence, officers began their search. Upon their initial search, the officers found various forms of marijuana in the home.

Kruse arrived home around 1:00 p.m. He asked the officers why they were there and how they were able to enter the home without his presence. Strecker and Kruse went into the kitchen to speak. They stood on opposite sides of the kitchen island. Strecker began recording their conversation using his audio recording device, placing it on the kitchen island.[1] Strecker handed Kruse a copy of the search warrant and gave Kruse time to read it. Strecker told Kruse that he was not in custody, that he could come and go as he pleased, and that Kruse did not have to talk to Strecker. Kruse indicated that he understood.

Strecker testified that at this point in time, the officers were not aware who in the residence had downloaded the illegal content or even how many people were currently residing in the home. For this reason, Strecker did not assume Kruse was the suspect. Instead, Strecker wanted to speak with Kruse to determine who in the home had downloaded the content.

Strecker informed Kruse that the officers were there because they suspected someone in the house was downloading and viewing child pornography and asked him a couple questions. Kruse indicated that he was the only person in the residence who had viewed the files. Strecker decided there was sufficient probable cause to arrest Kruse and advised Kruse of his Miranda rights. Kruse thereafter continued to answer questions.

Strecker and Kruse remained alone in the kitchen during the questioning. Strecker was dressed in civilian clothing and had his weapon visible on the outside of his clothes, but he did not reach for or brandish it during the interview. Strecker did not use force, coercion, or deception to gain Kruse's cooperation. Kruse did not appear to be under the influence of

---

[1] The court has fully reviewed the audio recording for its determination of this motion.

4

drugs or alcohol and he appeared to understand Sergeant Strecker's questions and what was occurring. Kruse was taken into custody when the questioning ended.

ANALYSIS

Kruse argues that due to the error in Paragraph 29, the affidavit lacked probable cause. He states there is no evidence in the affidavit linking his residence to the IP address implicated in the investigation. He states that the affidavit includes so little indicia of probable cause that the Leon good faith exception to the exclusionary rule does not apply.

A valid search warrant must be based upon a finding by a neutral, detached judge that there is probable cause to believe evidence, instrumentalities, fruits of a crime, or contraband may be found in the place to be searched. Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998)(citing Warden v. Hayden, 387 U.S. 294 (1967)). Probable cause can be found where, given the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Walden, 156 F.3d at 870 (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). Judges must read applications and affidavits with common sense and not in a grudging, hyper technical fashion. United States v. Ventresca, 380 U.S. 102, 109 (1965).

In this case, the affidavit stated that during an investigation 51 files of child pornography were located on the computer associated with IP 76.84.193.184. The affidavit described three of these files in detail. There is no question that probable cause existed to search the residence associated with IP 76.84.193.184.

But following the description of these files and the investigation, Paragraph 29 states "[A]fter confirming that this IP is registered to RoadRunner/Time Warner Cable, I requested an administrative subpoenas for subscriber information regarding the account holder using IP

5

76.84.193.235, as well as 76.84.203.155." (Filing No. 32-1 ¶ 29 at CM/ECF p. 7)(emphasis added). Considering the paragraphs leading up to Paragraph 29, a judge reading the affidavit using common sense would believe that Paragraph 29 concerns the IP address involved in the previously described investigation: The only IP address described in the affidavit to that point was IP 76.84.193.184. Therefore, based on a common sense reading of the affidavit the court finds that the affidavit was supported by probable cause.

Even if the affidavit was deficient, the warrant would still be valid under the Leon good-faith exception.

Where a search is conducted pursuant to a warrant, the Leon good faith exception to the exclusionary rule holds that evidence should not be suppressed due to a lack of probable cause unless the warrant was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" United States v. Warford, 439 F.3d 836, 841 (8th Cir. 2006) (quoting United States v. Leon, 468 U.S. 897, 923 (1984)). The officers' reliance on the warrant must be objectively reasonable. Leon, 468 U.S. at 919. "When assessing the good faith of the officers, the court should look to the totality of the circumstances, including any information known to the officers, but not included in the affidavit." United States v. Rodriguez, 484 F.3d 1006, 1011 (8th Cir. 2007)(citations omitted).

The good-faith exception does not apply when 1) the judge issuing the warrant was misled by an affiant's false statements; 2) the issuing judge wholly abandoned his or her judicial role; 3) the affidavit is so lacking in indicia of probable cause that official belief in its existence is entirely unreasonable; or 4) the warrant is so facially deficient that the officers cannot reasonably presume it to be valid. Leon, 468 U.S. at 923.

Kruse argues the good-faith exception does not apply for both the third and fourth reason. Additionally, Kruse points out that Sergeant Strecker made numerous mistakes when drafting the warrant. Kruse states that Strecker failed to provide an appropriate description of the residence; missed the mistake in Paragraph 29; did not include all relevant information from Sexton's report in the affidavit; and failed to mention in the warrant that a notary and not the judge had signed the documents. Kruse argues that due to these numerous mistakes, Sergeant Strecker could not reasonably rely on Leon's good faith protection.

The court does not believe Strecker's 'mistakes' support a finding that he was unreasonable. First, Strecker identified and corrected the residence description. Next, the other mistakes attributed to Strecker did not affect a finding of probable cause within the affidavit: The facts within the affidavit were sufficient to establish probable cause without including Sexton's entire report and the fact that an agent of the judge signed the document instead of the judge herself does not negate probable cause.

While it is undisputed that Sergeant Strecker failed to recognize the mistake in Paragraph 29 of the affidavit, it is similarly apparent that that his mistake was not an attempt to mislead the judge or to otherwise influence the judge's decision. Instead, Strecker held the honest belief that his affidavit was accurate and sufficient as written.

Prior to receiving the signed warrant, Strecker had spoken with Sexton regarding the child pornography and associated IP and he had received Sexton's report. Strecker filed a subpoena for subscriber information using the appropriate IP address and he received information from Time Warner connecting Kruse to the IP address and containing Kruse's information. And finally, Strecker prepared the affidavit and warrant, albeit with a mistake, and submitted it to the county judge for approval. Once the county judge approved the warrant there was no reason for Strecker to believe the warrant lacked probable cause or to otherwise question the judge's decision. This is especially true because Strecker was both

7

the affiant and executing officer for the warrant. See United States v. McKenzie-Gude, 671 F.3d 452, 461 (4th Cir. 2011) (explaining that an officer who is both the affiant and executing officer has less reason to question the judge's approval due to a failure "to recognize [his] own inadvertent [mistake]."). Sergeant Strecker knew that the Time Warner subpoena had been applied for using the correct IP address and had produced the address for the residence that was eventually searched. Therefore, even if the affidavit lacked probable cause, Strecker was allowed to rely upon it due to his knowledge of the investigation. The Leon good-faith rule applies.

                                    Statements

Kruse seeks to suppress statements made during the execution of the warrant at his residence. Kruse argues that he was not provided Miranda warnings prior to being questioned by Sergeant Strecker in his home. Kruse further argues that statements made after he was read his Miranda rights must be suppressed as part of an unconstitutional "question first" strategy.

Miranda warnings are required when an individual has been subjected to a "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). The warnings are necessary "to dispel the compulsion inherent in custodial surroundings." Id. at 444. A person is in custody for purposes of Miranda "either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way." United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990) (citing Miranda, 384, U.S. at 444). In determining whether a suspect was in custody, the court must ask "whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." United States v. Laurita, 821 F.3d 1020, 1024 (8th Cir. 2016) (citation omitted). The Eighth Circuit has developed six indicia of custody:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and], (6) whether the suspect was placed under arrest at the termination of the questioning.

Laurita, 821 F.3d at 1024 (citing Griffin, 922 F.2d at 1349). The first three factors represent mitigating factors, while the last three "may be characterized as coercive." Griffin, 922 F.2d at 1349. These factors are "not by any means exclusive[:]" custody should not be "resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." United States v. Czichray, 378 F.3d 822, 827 (8th Cir. 2004).

Shortly after Kruse arrived at his residence, he and Sergeant Strecker entered the kitchen to talk. Strecker informed Kruse he was not in custody, he could leave at any time, and that he did not have to answer any questions. Kruse was not restrained in any way: He was standing on the opposite side of a kitchen island from Strecker. Kruse acquiesced to Strecker's questions and appeared to understand what was happening. Strecker did not use any strong arm tactics or attempt to coerce Kruse's participation. Once Strecker realized that Kruse was the suspect, Strecker determined that Kruse would be taken into custody. Although he did not inform Kruse of this fact, Strecker then provided Kruse his Miranda rights.

These factors weigh against a finding Kruse was in custody. Kruse was free to leave and was not restrained. He was also told that he did not have to speak. The Eighth Circuit has observed that "the most obvious and effective means of demonstrating that a suspect has not been taken into custody . . . is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." Czichray, 378 F.3d at 826

9

(quoting Griffin, 922 F.2d at 1349). Additionally, the fact that Kruse was questioned in his home mitigates a finding of custody. See United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985) (holding when a person is questioned in his own home, the surroundings "are not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation."). And although the overall atmosphere of the home appeared to be police-dominated, Sergeant Strecker and Kruse were away from the activity in the kitchen. Based on a totality of the circumstances, the court finds Kruse was not in custody for purposes of Miranda.

Kruse next argues that all post-Miranda statements must be suppressed due to unconstitutional questioning tactics. He argues that Sergeant Strecker employed a "question first" interrogation technique by purposefully withholding Miranda warnings until he obtained the desired incriminating statements.

Where an officer questions a suspect and deliberately delays reciting the Miranda warnings in order to elicit a confession, any statements made after the warnings are inadmissible. United States v. Torres-Lona, 491 F.3d 750, 757–58 (8th Cir. 2007) (citing Missouri v. Seibert, 542 U.S. 600, 622 (2004)(Kennedy, J., concurring)). This is because this "two part interrogation" technique is unlawfully used to "circumvent Miranda requirements." Torres-Lona, 491 F.3d at 757 (citing Seibert, 542 U.S. at 615–16). But "[w]here there has been no such calculated effort" the post-warning statements are admissible where the defendant waived his rights. United States v. Wise, 588 F.3d 531, 536 (8th Cir. 2009) (citing Oregon v. Elstad, 470 U.S. 298, 309 (1985)). The burden rests with the prosecution to prove "by a preponderance of the evidence, that the officer's failure to provide warnings at the outset of questioning was not part of a deliberate attempt to circumvent Miranda." United States v. Ollie, 442 F.3d 1135, 1143 (8th Cir. 2006).

10

First, the court notes that Kruse was <u>not</u> subject to a custodial interrogation when he was initially questioned. Typically, cases applying <u>Seibert</u> involve a suspect initially subjected to custodial interrogation without <u>Miranda</u> warnings, the warnings are then provided and the questions are repeated, all as an attempt to "save" the responses from suppression and make them available for use at trial. <u>See</u>, e.g., <u>Seibert, 542 U.S. 600</u>; <u>Ollie, 442 F.3d 1135</u>. Kruse states that <u>Seibert</u> should be extended to apply in this case. He argues that Strecker had probable cause to place Kruse under arrest, and purposefully chose not to in furtherance of his interrogation scheme.

Sergeant Strecker testified that often in investigations regarding child pornography, the officers do not know which household resident was responsible for the illegal act. Therefore, before placing any resident under arrest, he attempts to identify the responsible person or persons. Before executing the search warrant on October 29, 2015, Strecker did not know how many occupants resided at or may be staying at the home. And when Kruse arrived, Strecker did not know whether Kruse was the person who should be arrested.

Regarding the marijuana found in the home, Strecker testified that police must find a certain quantity of marijuana before there is probable cause for an arrest. Based upon the various types of marijuana found at the residence, it was difficult to determine total quantity at that time and Strecker determined an arrest could not be made.

For these reasons, Strecker did not believe he had probable cause to arrest Kruse at the time Kruse arrived at the residence. Therefore, Strecker asked questions to establish probable cause, not to circumvent <u>Miranda</u>. And once Strecker determined there was probable cause to arrest Strecker, he immediately provided the <u>Miranda</u> warnings. Additionally, Kruse was told he did not have to answer questions, was not under arrest, and was free to leave—this bolsters the court's opinion that Strecker was not attempting to deceive Kruse and circumvent <u>Miranda</u>. To the extent <u>Seibert</u> applies to this case, the court

11

finds that Sergeant Strecker did not deliberately withhold <u>Miranda</u> to elicit incriminating statements from Kruse.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, Senior United States District Judge, pursuant to [28 U.S.C. § 636(b),](#) that the motion to suppress filed by the defendant ([Filing No. 28](#)) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before Richard G. Kopf, Senior United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on January 3, 2017 or as soon thereafter as the case may be called, for a duration of four (4) trial days. Jury selection will be held at the commencement of trial.

Dated this 6th day of December, 2016

BY THE COURT:

<u>s/ Cheryl R. Zwart</u>
United States Magistrate Judge